Joan C. Orejuela, Esq.
American Friends Service Committee
89 Market Street, 6th Floor
Newark, New Jersey 07102
jorejuela@afsc.org

*Pro Bono Counsel for Petitioner*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JONNY GARCIA CASCO, <br><br> *Petitioner*, <br><br> v. <br><br> WARDEN, Delaney Hall Detention Facility <br><br> TODD M. LYONS, in his official capacity as Acting Director of the Immigration and Customs Enforcement; <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; <br><br> TODD BLANCHE, in his official capacity as Attorney General of the United States; <br><br> *Respondents*. | **Case No.** <br><br><br> **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

1.     Petitioner Jonny Garcia Casco ("Mr. Garcia Casco" or "Petitioner") is a New Jersey resident and father of two who has lived in the United States for over 10 years. He is currently detained by Immigration and Customs Enforcement ("ICE") at the Delaney Hall Detention Facility in Newark, New Jersey. He has been detained since August 27, 2025. At the time of his arrest, he was residing at 2934 N Constitution Road, Camden, New Jersey 08104.

2.     Mr. Garcia Casco is a native of Nicaragua who fled political violence multiple times, seeking refuge in the United States. His case is currently pending before the Board of Immigration Appeals. At the time of his arrest, he was under an active order of supervision with ICE.

3.     Mr. Garcia Casco first arrived in the United States in March 2006. He lived here for over a decade before being ordered deported in June 2017. However, upon his return, his persecution continued in Nicaragua. Once he arrived back in his home country in 2017, he was detained by Nicaraguan authorities because of his father's political activities and continued to receive threats throughout his time there. Because of these continued threats, Mr. Garcia Casco returned to the U.S. in 2021.

4.     Upon his entry in June 2021, Mr. Garcia Casco once again declared his fear of returning to his home country due to political violence. At the border,

ICE released Mr. Garcia Casco on an Order of Supervision ("OSUP") to await a reasonable fear interview to determine whether his case should be referred to an immigration judge to apply for withholding or deferral of removal. Mr. Garcia Casco waited for this interview from June 2021 to August 2025. In the years during his release, Mr. Garcia Casco did not violate the terms of his OSUP.  Please see attached **Exhibit A**. Nevertheless, on August 27, 2025, he was detained following the conclusion of his reasonable fear interview. This arrest occurred even though the interviewing officer found Mr. Garcia Casco to have a reasonable fear of persecution. At the end, the reasonable fear review was ultimately closed by the immigration judge due to a failure to prosecute.

5.     Mr. Garcia Casco's detention violates 8 U.S.C. § 1231(a) because the Department of Homeland Security ("DHS") did not follow the proper procedure for revocation of his release and because his removal is not reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Further, his detention does not serve a legitimate government purpose given that his arrest occurred after Mr. Garcia Casco had established a reasonable possibility of future persecution if returned to his home country. He has been free on release for four (4) years while waiting for the government to schedule his reasonable fear interview. Surely, having established this fear, he should have remained free.

3

6.      Mr. Garcia Casco is being detained in violation of his statutory, regulatory and constitutional rights and will remain so absent relief from this Court. Accordingly, Mr. Garcia Casco seeks a writ of habeas corpus finding that he is unlawfully detained and requiring that he be immediately released so that he can rejoin his children, family and community members.

## JURISDICTION

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 2241 (the general grant of habeas authority to the district court); Art. I § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"); 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act).

8.      District courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of their civil immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839–42 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Court has jurisdiction to order Petitioner's immediate release from unlawful custody. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy [for unlawful detention] is, of course, release.") (citation omitted); *see also, Leslie v. Holder*, 865 F. Supp. 2d 627, 641 (M.D. Pa. 2012) (district court ordering release of non-citizen).

4

## VENUE

9.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because at least one of the Respondents is a resident of this District, and a substantial part of the events giving rise to the claims in this action took place within this district. 28 U.S.C. § 1391. *See Braden v. 30th Judicial Circuit*, 410 U.S. 484, 493–94 (1973) (laying out traditional venue factors) (holding that venue lies where it is most convenient, where "material events took place," and where "records and witnesses pertinent to petitioner's claim are likely to be found."). Mr. Garcia Casco is physically detained in Newark, New Jersey, which is located in this district, and events or omissions giving rise to this action continue to occur in this district.

## PARTIES

10.      Petitioner Mr. Garcia Casco is a citizen of Nicaragua, New Jersey resident, and father of two currently detained by ICE at the Delaney Hall Detention Facility in Newark, New Jersey. He has been detained in ICE custody since approximately August 27, 2025, when he was detained at the U.S. Citizenship and Immigration Services in Newark at his reasonable fear interview. That same day he had established a reasonable fear of persecution in his home country.

11.     Respondent Todd M. Lyons is the Acting Director of ICE. As such, Todd Lyons is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

12.     Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

13.     Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

14.     Respondent Warden of the Delaney Hall Detention Facility in Elizabeth, New Jersey, where Mr. Garcia Casco is detained. They have immediate physical custody of Petitioner. They are sued in their official capacity.

6

## FACTS

15.    As a young man, Mr. Garcia Casco fled political violence in Nicaragua and crossed the United States' southern border for the first time in 2006. Mr. Garcia Casco entered without inspection, and he lived in the United States until June 2017, primarily in New Jersey.

16.    Upon returning to Nicaragua, Mr. Garcia Casco was unjustly detained for seventy-two (72) hours. The detention was for interrogation purposes as Mr. Garcia Casco's father, Porfirio Andres Garcia Flores, had belonged to an anti-Sandinista group and was routinely harassed and threatened because of his involvement in the 1980's conflict. Due to the ongoing politically motivated threats against himself and his family, Mr. Garcia Casco was forced to close the restaurant in Nicaragua he had opened in 2018. Thereafter, in 2020, his father was shot by members of the military. Between January 2021 and March 2021, Mr. Garcia Casco was also the victim of a home invasion and assault attempt. As a result, in May 2021, he made the decision to leave Nicaragua once again.

17.    In June of 2021, Mr. Garcia Casco was once again detained by immigration authorities upon his entry into the U.S.. In custody, his removal order was reinstated per 8 U.S.C. § 1231(a)(5). However, Mr. Garcia Casco articulated to DHS that he feared persecution and/or torture in Nicaragua. He was therefore supposed to be afforded an interview with an asylum officer to analyze likelihood

of harm to warrant protection. Before an interview was conducted at the border, DHS authorized Mr. Garcia Casco's release pursuant to an OSUP over what became many subsequent years. He complied with these requirements. Mr. Garcia Casco did not violate any of the terms of his OSUP. He has no additional arrests or criminal history.

18.    On August 27, 2025, Mr. Garcia Casco was finally scheduled for an interview to determine the reasonableness of his claim for asylum. At the interview, he established a reasonable fear of returning to his home country to be placed in removal proceedings to have his claim heard by an immigration judge. However, at the interview, ICE detained Mr. Garcia Casco.

19.    Mr. Garcia Casco was not informed of the revocation of his OSUP, not subject to an interview, and not informed of any reason for his re-detention. In fact, DHS did not inform Mr. Garcia Casco's counsel of his detention at any point in time.

20.    Mr. Garcia Casco has now been in custody for over 6 months.

## LEGAL FRAMEWORK

### I.    Substantive and Procedural Regulations Governing Revocation of Orders of Supervision.

21. A non-citizen with a final order of removal "who is not removed within the [90-day] removal period . . . shall be subject to [an order of] supervision

8

under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (titled "Supervision after 90-day period").

22. A non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. Id. § 1231(a)(6).

23. But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." Zadvydas v. Davis, 533 U.S. 678, 699-700.

24.   An Order of Supervision is issued under 8 U.S.C. § 1231(a)(3). The supervision regulations at 8 C.F.R. §§ 241.4 and 241.5 implement release and revocation under § 1231(a)(6). These provisions apply to noncitizens released from custody pursuant to a final order of removal and define the conditions of release after the removal period. *See* 8 C.F.R. § 241.5 ("A[] [noncitizen] released pursuant to § 241.4 shall be released pursuant to an order of supervision."). 8 U.S.C. §

1231(a)(6) dictates that post-order detention is only permissible if an individual is a "a risk to the community or unlikely to comply with the order of removal."

25.    Once ICE releases a noncitizen on an OSUP, ICE's ability to re-detain that noncitizen is constrained by its own regulations. Two regulations provide for when ICE can revoke an individual's OSUP. 8 C.F.R. §§ 241.13, 241.4.

26.    Under Section 241.13, ICE may re-detain a noncitizen released on an OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Where the government "has not identified any third country willing to accept [a noncitizen]" nor "made any meaningful progress toward requesting or securing his travel documents," it "falls well short of demonstrating changed circumstances or a significant likelihood of removal in the reasonably foreseeable future." *Phongsavanh v. Williams*, 2025 WL 3124032, at *5 (S.D. Iowa Nov. 7, 2025) (granting habeas petition).

27.    Additionally, if a noncitizen released on an OSUP violates a condition of release, they "may be returned to custody." 8 U.S.C. § 241.13(i)(1). If ICE elects to revoke a noncitizen's release under Subsections 241.13(i)(1) or (2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to

10

respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3).

At that interview, the noncitizen "may submit any evidence or information that he

or she believes shows there is no significant likelihood he or she be removed in the

reasonably foreseeable future, or that he or she has not violated the order of

supervision." *Id.*

28.    Section 241.4 also provides two grounds for the revocation of release.

First, if the individual violates a condition of release, they may be returned to

custody. *Id.* § 241.4(*l*)(1); *cf. Zhu v. Genalo*, 2025 WL 2452352, at *8-9 (S.D.N.Y.

Aug. 26, 2025) (ICE's failure to provide petitioner with notice or an interview prior

to being re-detained violated ICE's own regulations under Section 241.4 and

petitioner's due process rights, requiring release); *Gamez v. Francis*, 2025 WL

3263896, at *23, 25 (S.D.N.Y. Nov. 24, 2025) (same).

29.    Second, the Executive Associate Commissioner (or a district director,

where "revocation is in the public interest and circumstances do not reasonably

permit referral of the case to the Executive Associate Commissioner) has the

discretion to revoke release if, (1) "the purposes of release have been served;" (2)

"the [noncitizen] violates any conditions of release;" (3) "it is appropriate to

enforce a removal order or to commence removal proceedings against [a

noncitizen];" or (4) "the conduct of the [noncitizen], or any other circumstance,

indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(2). If the

11

Executive Associate Commissioner (or district director, where permitted) does not revoke release under § 241.4(*l*)(2), the revocation is invalid. *See E.M.M. v. Almodovar*, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025) (holding that an OSUP revocation under § 241.4(*l*)(2) was invalid where an assistant field office director, not the Executive Associate Commissioner or district director, revoked the petitioner's release); *Gamez*, 2025 WL 3263896, at *18-20 (holding that revocation of an OSUP was void because it was signed by the acting assistant field office director).

30.    When ICE revokes someone's OSUP under either § 241.13(i)(3) or § 241.4(*l*), it must notify that person "[u]pon revocation" "of the reasons for revocation of his or her release" and conduct an "initial informal interview" to give the individual "an opportunity to respond to the reasons for revocation stated in the notification." Where ICE fails to comply with those requirements, the individual must be released from re-detention. *See McSweeney v. Warden of the Otay Mesa Det. Facility*, 2025 WL 2998376, at *5-7 (S.D. Cal. Oct. 24, 2025); *M.S.L. v. Bostock*, 2025 WL 2430267, at *10-12 (D. Or. Aug. 21, 2025); *Zhu v. Genalo*, 2025 WL 2452352, at *8-9 (S.D.N.Y. Aug. 26, 2025).

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Fifth Amendment of the U.S. Constitution
### Substantive Due Process

31.    Mr. Garcia Casco realleges all paragraphs above as if fully set forth here.

32.    The Due Process Clause grants protections to "all persons within the territory of the United States." *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

33.    Mr. Garcia Casco has a fundamental interest in liberty and being free from official restraint.

34.    The only legitimate purpose, consistent with due process, for federal civil immigration detention is to prevent flight risk and ensure the detained person's attendance for a legal hearings adjudicating their status or potential removal, or to otherwise ensure the safety of the community. *Id.* at 690–91.

35.    When ICE issued Mr. Garcia Casco an order of supervision, it found that he is neither a danger to the community nor a flight risk. When Respondents

purportedly revoked the order of supervision, Mr. Garcia Casco had complied with every condition of the order. No change in circumstances warranted the order's revocation.

36.    Because Respondents had no legitimate, non-punitive objective in revoking his order of supervision, Mr. Garcia Casco's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution. Detention is constitutional only if it serves a lawful purpose, and here, there is none.

37.    When a noncitizen is not deportable, insofar as their appeal of removal is pending, the Due Process Clause requires that any deprivation of liberty be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"). No such compelling interest exists here. Thus Mr. Garcia Casco's detention violates his right to substantive due process.

## COUNT II

### Violation of the Fifth Amendment of the U.S. Constitution
### Procedural Due Process

38.    Mr. Garcia Casco realleges all paragraphs above as if fully set forth here.

14

39.     *Mathews v. Eldridge*, 424 U.S. 319, 333, instructs courts to balance three factors to determine whether procedural due process is satisfied: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and, (3) the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements entail.

40.     The first factor, the private interest at issue, favors Mr. Garcia Casco. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690.

41.     The second factor, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards, favors Mr. Garcia Casco. To safeguard against erroneous deprivations of liberty, the statute specifies the limited number of reasons that an order of supervision can be revoked. Regulations specify who may lawfully revoke the order and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard. Respondents violated those laws here, leaving the risk of erroneous deprivation of liberty not just high, but certain. Requiring Respondents to give notice and an opportunity to respond prior to revoking an order of supervision is of great value because it reduces the

15

probability of needless detention of a person, like Mr. Garcia Casco, who is neither dangerous nor a flight risk.

42.    The third factor, the government's interest, also favors Mr. Garcia Casco. When the government ignores law that ensures notice and an opportunity to respond to a person at risk of revocation of an order of supervision, it is more likely to waste limited financial and administrative resources on unnecessary detention of people who are neither flight risks nor dangerous. This waste drags down the efficiency of the entire immigration system. And because the government must also spend resources defending against a habeas corpus petition in federal court to compel Respondents to comply with law, requiring Respondents to instead provide notice and a meaningful opportunity to respond prior to revoking an order of supervision reduces fiscal and administrative burdens on the government.

43.    For these reasons, purportedly revoking Mr. Garcia Casco's order of supervision without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment to the U.S. Constitution.

## COUNT III

### Violation of Administrative Procedure Act
### Revocation of OSUP

44.    Mr. Garcia Casco realleges all paragraphs above as if fully set forth here.

16

45.     The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).

46.     An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

47.     To survive an APA challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted).

48.     The revocation of Mr. Garcia Casco's OSUP was not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances.

49.     Upon information and belief, Mr. Garcia Casco's order of supervision was not revoked by the ICE Executive Associate Director. The officer who revoked

17

the order did not first make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the Executive Associate Director. Before revoking the order, Respondents did not make findings that Mr. Garcia Casco is dangerous or unlikely to comply with a removal order, as required by statute.

50.     Respondents did not comply with the relevant regulations. Respondents could not make findings that Mr. Garcia Casco's conduct indicated release would no longer be appropriate or that Mr. Garcia Casco violated any condition of release, because he had not. Nor could Respondents make findings that the purposes of release had been served or that it was appropriate to enforce a removal order, because Mr. Garcia Casco cannot be removed at this time due to his deferred action and pending immigration hearing remanded from the Third Circuit. Nor did the Respondents give Mr. Garcia Casco notice of the reasons for revocation and opportunity to be heard, all in violation of the APA.

**COUNT IV**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**Arbitrary and Capricious**

1.     Mr. Garcia Casco realleges all paragraphs above as if fully set forth here.

2.     Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

18

3.     Respondents' revocation of Mr. Garcia Casco's order of supervision was arbitrary and capricious because it violated statute, regulation, and the Constitution, as described above.

4.     An agency decision that "runs counter to the evidence before the agency" is also arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

5.     Respondents' decision to revoke Mr. Garcia Casco's order of supervision ran counter to the evidence before the agency that Mr. Garcia Casco would comply with a demand to appear for removal without detention. Mr. Garcia Casco has never violated a condition of his order of supervision and no new facts or changed circumstances suggest he would.

6.     The revocation also "failed to consider important aspects of the problem" before Respondents, making it arbitrary and capricious for multiple other reasons. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1910 (2020).

7.     First, Respondents failed to consider the serious constitutional concerns raised by revoking Mr. Garcia Casco's order of supervision without notice and opportunity to respond.

8.     Second, Respondents failed to consider the increased administrative burden to the agency caused by revoking the order of supervision of Mr. Garcia

19

Casco, who is neither a flight risk nor a danger to the community, including financial and administrative costs incurred by the agency due to unnecessary detention.

9. Third, Respondents failed to consider reasonable alternatives to revoking Mr. Garcia Casco's order of supervision that were before the agency, like simply continuing release under the order of supervision and scheduling a future time and date to appear for removal. This alternative would vindicate the government's interests in effectuating a removal order and save it the expense of detention not needed to guarantee Mr. Garcia Casco's appearance.

10. For these and other reasons, Respondents' revocation of Mr. Garcia Casco's order of supervision was arbitrary and capricious and should be held unlawful and set aside.

## Count V
## Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C)
## In Excess of Statutory Authority

11. Mr. Garcia Casco realleges all paragraphs above as if fully set forth here.

12. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

20

13.    "An agency . . . literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (internal quotation marks and citation omitted).

14.    8 U.S.C. § 1231(a)(6) only authorizes detention past the 90-day removal period for a person who is found to be a danger to the community, unlikely to comply with a removal order, or whose removal order is on certain grounds specified in the statute. Even then, if removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700.

15.    Regulations that purport to give Respondents authority to revoke an order of supervision on grounds other than those listed § 1231(a)(6) are ultra vires and in excess of statutory authority because "[r]egulations cannot circumvent the plain text of the statute." *You v. Nielsen*, 321 F. Supp. 3d. 451, 463 (S.D.N.Y. 2018)

16.    Respondents' revocation of Mr. Garcia Casco's order of supervision was based on ultra vires regulations. So it was in excess of statutory authority and should be held unlawful and set aside.

21

## COUNT VI
### Violation of the *Accardi* Doctrine

51. Petitioner realleges all paragraphs above as if fully set forth here.

52. Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003).

53. Under the *Accardi* doctrine, Mr. Garcia Casco has a right to set aside agency action that violated agency procedures, rules, or instructions. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 ("If petitioner can prove the allegation [that agency failed to follow its rules in a hearing] he should receive a new hearing").

54. When ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered. *Khamba v. Albarran*, No. 1:25-CV-01227 JLT SKO, 2025 WL 2959276, at *9 (E.D. Cal. Oct. 17, 2025), citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp.3d 383, 387 (D. Mass. 2017).

55. Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it purportedly revoked Mr. Garcia Casco's order. "As a result, this Court cannot conclude that [the revoking officer] had the authority to revoke release" and Mr. Garcia Casco "is entitled to release on that basis alone." *Ceesay,* 781 F. Supp. 3d 137, 162 (citing

22

*Rombot v. Moniz*, 296 F. Supp. 3d 386, 386-89); *see also, e.g.*, *Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025); *M.S.L. v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (releasing habeas petitioner where revocation of an ICE order of supervision was ordered by someone without regulatory authority to do so).

56.     Under *Accardi*, Respondents' revocation of the order of supervision should be set aside for violating agency procedures, rules, or instructions.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Garcia Casco prays that this Court grant the following relief:

a.     Assume jurisdiction over this matter;

b.     Order that Mr. Garcia Casco shall not be transferred outside the District of New Jersey while this habeas petition is pending;

c.     Declare that Mr. Garcia Casco's detention is unlawful;

d.     Issue a Writ of Habeas Corpus requiring that Respondents release Mr. Garcia Casco and prohibit Respondents from detaining him unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Mr. Garcia Casco is a flight risk or danger to the community;

e.     Grant any other and further relief that this Court deems just and proper.

23

Respectfully submitted,
s/ Joan C. Orejuela, Esq.
Joan C. Orejuela, Esq.
American Friends Service Committee
570 Broad Street, Suite 1001
Newark, NJ 07102

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, JONNY GARCIA CASCO, and submit this verification

on his behalf. I hereby verify that the factual statements made in the foregoing

Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: May 6, 2026                                    Respectfully submitted,

*/s/ Joan C. Orejuela, Esq.*
Joan C. Orejuela, Esq., Esq.
*Pro Bono Counsel for Petitioner*

24

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that on this date, I filed this Petition for Writ of Habeas Corpus and all attachments using the CM/ECF system. I will furthermore mail a copy by USPS Priority Mail to each of the following individuals:

Warden of the Delaney Hall Detention Facility
451 Doremus Avenue
Newark, New Jersey 07105

Todd Lyons
Acting Director, Immigration and Customs Enforcement
500 12th St. SW
Washington, DC 20536

Markwayne Mullin
Secretary of the U.S. Department of Homeland Security
c/o Office of the General Counsel
2707 Martin Luther King Jr. Ave., SE
Washington, DC 20528-0485

Todd Blanche
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW

Washington, DC 20530-0001

Dated: May 5, 2026

*s/ Joan C. Orejuela, Esq.*
Joan C. Orejuela, Esq.
*Pro Bono Counsel for Petitioner*